REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 322

September Term, 2016

A.C.

v.

MARYLAND COMMISSION ON CIVIL
RIGHTS, et al.

Meredith,
Berger,
Kenney, James A., III
   (Senior Judge, Specially Assigned),

JJ.

Opinion by Berger, J.

Filed: April 28, 2017

This appeal arises from the circuit court's dismissal of appellant's ("A.C.") petition for judicial review of a decision by appellee, the Maryland Commission on Civil Rights ("the Commission"). In May, 2012, A.C. was terminated from her position as an assistant attorney general with appellee, the Office of the Attorney General ("the OAG"). Thereafter, A.C. filed a charge of race discrimination and retaliation against the OAG with the Commission. Almost three years later, the Commission issued a finding of no probable cause that a discriminatory act occurred. The Commission further denied A.C.'s subsequent request for reconsideration. A.C.'s complaint was then forwarded to the United States Equal Employment Opportunity Commission (EEOC), which ultimately upheld the Commission's findings. Pending the EEOC's review, A.C. filed a petition for judicial review of the Commission's decision to deny her request for reconsideration in the Circuit Court for Baltimore City. On April 5, 2016, the circuit court dismissed the petition for judicial review.

A.C. presents four issues for our review, which we have reworded as follows:

1. Whether the circuit court erred when it denied A.C.'s petition for judicial review of the Commission's decision to deny A.C.'s request for reconsideration, where no statute conferred authority on the circuit court to hear the petition.

2. Whether the circuit court erred when it permitted the Commission and the OAG to file motions to dismiss more than thirty days after each received notice of the petition for judicial review.

3. Whether the circuit court erred when it dismissed A.C.'s petition for judicial review without requiring the Commission to transmit its investigative files to the circuit court.

4. Whether the circuit court erred when it denied A.C.'s motion to amend her complaint to include a motion for a writ of mandamus to require the OAG to provide certain disciplinary procedures permitted to certain employees under Md. Code (1984, 2014 Repl. Vol.), § 11-106(a) of the State Personnel and Pensions Article ("SP").

## BACKGROUND

In 2005, A.C. was appointed as an Assistant Attorney General in the Office of the Attorney General. On May 4, 2012, A.C. was terminated from her position. On October 29, 2012, A.C. filed an administrative complaint with the Commission alleging that her termination was based on race discrimination and retaliation.

On October 1, 2015, the Commission issued its written decision in which it found that A.C.'s performance "proved less than satisfactory." A.C. asserts that she was not provided with any information regarding the reason for her termination on the day she was terminated. The Commission agreed with A.C.'s assessment, but found that the absence of information was consistent with the OAG's procedure regarding the termination of an employee who serves as a "Special Appointment."

The Commission's written findings provide that A.C.'s termination was the "result of her documented consistent unwillingness to comply with her supervisor's requests," her unprofessional conduct (as documented in email exchanges between her and her supervisor), and other short-falls, such as her failure to recognize settlement opportunities. The Commission found that in addition to her unprofessional conduct, A.C. failed to put forward evidence of any discriminatory conduct towards her based on race. The Commission, therefore, determined that there was "[n]o Probable Cause to believe that the

2

[OAG] discriminated against [A.C.] because of race under Title 20, Subtitle 6 of the State Government Article."

Along with the written findings of the Commission, A.C. received a letter, dated October 1, 2015, explaining her right to pursue the claim and that she had additional appeal rights with the EEOC.

> Please note that this charge was dually filed with the [EEOC]. Accordingly, the Complainant has additional appeal rights with the EEOC. The Complainant is entitled to request EEOC to perform a "Substantial Weight Review" of the Commission's final finding. To obtain a Substantial Weight Review, the Complainant must make [his or her] request in writing, within 15 days of receipt of this letter. The request for review should contain the Complainant's name, charge number and any other additional information the Complainant believes would be helpful for the EEOC's review. Otherwise, the EEOC will generally adopt the Commission's findings.
>
> Additionally, the Complainant has the right to request a Federal Notice of Right to Sue from the EEOC which would enable the Complainant to file a complaint in Federal District Court. The issuance of a Notice of Right to Sue will normally result in EEOC terminating all further processing.

On October 15, 2015, A.C. submitted a request for reconsideration with the Commission. On November 15, 2015, after a review of the investigative file, the Commission denied reconsideration pursuant to COMAR 14.03.01.08C. The letter included the following paragraph:

> You have the right to pursue your complaint with the Equal Employment Opportunity Commission or in the United States District Court for Maryland upon obtaining a Notice of Right to Sue from the EEOC. You must notify the EEOC in writing

3

within 15 days of this letter to request a review of the Maryland Commission on Civil Rights final decision . . . .

On or around the same day that A.C. submitted a request for reconsideration with the Commission, she also submitted a request for review to the EEOC. Thereafter, the EEOC reviewed the findings and investigative file of the Commission and the additional information provided by A.C. The EEOC upheld the findings of the Commission. A letter dated December 15, 2015 to A.C. included the following information:

> This review failed to reveal that the [Commission] was deficient in its investigation of your charges, and specifically, that it did not correctly apply the laws that EEOC enforces when examining the evidence and reaching its findings of facts. As a result, I am recommending that the previous findings of the [Commission], that there was no probable cause to believe that the law had been violated, be upheld.
>
> In view of the above, your charge with EEOC is dismissed. Enclosed herein is a Notice of Rights which will enable you to file a lawsuit in Federal Court, should you so desire, within 90 days. We regret that we cannot be of further assistance to you in this matter.

A separate document, included with the letter, provided notice to A.C. of her right to bring a claim under federal law (i.e. Title VII of the Civil Rights Act of 1964) based on race discrimination in federal court and that, if brought in federal court, it must be brought within 90 days of receiving the document. Finally, additional information regarding A.C.'s right to pursue the case was attached to the notice, which included the following information and instructions:

> At the time you filed your charge with the [Commission], you were notified in writing by the [Commission] that it would dual-file your charge for you with the [U.S. EEOC] in order to

4

preserve your right to file a lawsuit in Federal District Court. The [Commission] . . . notified you in writing of the reason for its closure of your charge . . . . EEOC has reviewed and adopted the [Commission's] findings, and has closed the dual-filed EEOC charge. . . . *This Dismissal & Notice of Rights authorizes you to file a lawsuit in Federal District Court within 90 days if you choose to do so* . . . . EEOC does not encourage or discourage such legal action; [. . . ]

If however, you do elect to file a lawsuit, *you must do so with a Federal District Court within 90 days of the date you received the Dismissal & Notice of Rights*, not the date it is dated. [ . . .]

If you are going to file a lawsuit and need to obtain a copy of the information obtained during the [Commission's] processing of your charge, make your request promptly in writing to the [Commission] that investigated your charge (NOT EEOC). EEOC does not obtain the [Commission's] investigative case file.

(Emphasis Added.)

Rather than file a discrimination claim in either federal or state court, A.C. filed a petition for judicial review of the Commission's "no probable cause" finding on December 4, 2015.[1] On December 16, 2015, the Commission sent A.C. a letter confirming that it had received a copy of her petition for judicial review and that the Commission

---

[1] In a letter dated February 22, 2016, A.C. sent a letter to the OAG asserting that,

> "[p]ursuant to Maryland Rule 7-206, the [Commission] was required to transmit the record from the agency's determination of No Probable Cause "within 60 days after the agency receive[d] the first petition for judicial review." (Md. Rule 7-206(d)). The agency's record is now overdue. Please be kind enough to submit the agency's record . . . ."

5

would not be participating as a party. Nevertheless, on February 18, 2016, the Commission filed a "Motion to Dismiss Petition for Judicial Review and Preclusion from Transmitting Investigative File." In its motion, the Commission argued that A.C. was not entitled to judicial review in circuit court, pursuant to Md. Code (1984, 2014 Repl. Vol.), § 20-1005(d) of the State Government Article ("SG"), and that "the Commission was barred from submitting its investigative file as the agency record because the petition is improper."

On March 1, 2016, the OAG also filed a motion to dismiss A.C.'s petition for judicial review, pursuant to Rule 7-204(b), and adopted and incorporated the arguments presented in the Commission's motion to dismiss. The OAG asserted, as both the OAG and the Commission continue to argue on appeal, that:

> The [EEOC], which assumed jurisdiction over [A.C.'s] claims for discrimination and retaliation, has dismissed her claim of discrimination and issued her Notice of Right to Sue . . . . Thus, the Commission's finding of no probable cause for discrimination and retaliation is not subject to judicial review by this [c]ourt. SG § 20-1005(d)(2).

Neither A.C. nor the OAG or the Commission requested a hearing on their motions to dismiss filed in the circuit court. On April 5, 2016, the circuit court granted the OAG's motion to dismiss, granted the Commission's "Motion to Dismiss Petition for Judicial Review and Preclusion from Transmitting Investigative File," and denied A.C.'s request for leave to amend her complaint to include a request for a writ of mandamus. The court's decision was based, in part, on its finding that a "no probable cause" finding by the Commission in this case was "not an appealable final order subject to judicial review in

6

[the circuit court]," and that A.C. "has, and has had, an avenue through which to seek legal recourse."

## DISCUSSION

### I.     Standard of Review

Our review of the circuit court's grant of the OAG's and the Commission's motion to dismiss is *de novo*. *Gasper v. Ruffin Hotel Corp. of Maryland*, 183 Md. App. 211, 226, (2008), *aff'd*, 418 Md. 594 (2011). As we stated in *Gasper*, "[i]n reviewing the underlying grant of a motion to dismiss, we must assume the truth of the well-pleaded factual allegations of the complaint, including the reasonable inferences that may be drawn from those allegations." *Id.* (quoting *Adamson v. Corr. Med. Servs.*, 359 Md. 238, 246 (2000)). Furthermore, issues of statutory interpretation are legal issues for which we review for legal correctness. *Falls Road Community Ass'n v. Baltimore Cnty.*, 437 Md. 115, 134 (2014).

### II.    Federal and State Framework

In Maryland, both state and federal agencies provide a remedy for individuals who bring claims of race discrimination in employment. At the federal level, Title VII of the Civil Rights Act of 1964 protects employees from discrimination in his or her "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. The EEOC is the federal agency charged with enforcing Title VII and other anti-discrimination statutes. *See* 42 U.S.C. § 2000e-4.

When a complaint is filed with the EEOC, the agency investigates the complaint and determines whether there is reasonable cause to believe the allegations of discrimination. 29 C.F.R. § 1601.21.  If reasonable cause exists, the EEOC may decide to pursue a claim on behalf of the aggrieved party.  The EEOC, however, does not have the authority to fully adjudicate claims of discrimination and impose sanctions on employers -- a power that remains with the federal courts.[2]  *See* 42 U.S.C. § 2000e-4; *Laber v. Harvey*, 438 F.3d 404, 416 (4th Cir. 2006).  If the EEOC does not find reasonable cause, or in some situations upon request from the claimant prior to the conclusion of the investigation, the EEOC issues a "Right to Sue" letter allowing the claimant to file a private civil action in a U.S. District Court.  *Laber*, 438 F.3d at 416 (citing 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. § 1601.28).

As in the instant case, the EEOC works with state and local fair employment practices agencies ("FEP") who administer similar state anti-discrimination laws.  *See* 42 U.S.C. § 2000e-8(b).  The Maryland Civil Rights Act protects the same classes as those covered by Title VII, including race, as well as additional classes.[3]  *See* SG § 20-606(a).

---

[2]  Federal employees' claims are treated differently; in those cases, the EEOC does have the authority to adjudicate those claims and impose sanctions. *See* 42 U.S.C. § 2000e-16(b).

[3]  Section 20-902(a) of the State Government Article provides:

> In an employment discrimination case in which a unit, officer, or employee of the State, a county, or a municipality is a

In Maryland, the Commission, a FEP agency, is authorized under SG § 20-207 to hold investigatory hearings "[w]henever any problem of racial discrimination arises . . . . to resolve the problem promptly by gathering all of the facts from each interested party and mak[e] recommendations as necessary." SG § 20-207(d)(1). If the Commission's investigation does not find probable cause that the alleged discriminatory act occurred, it must issue its written findings and dismiss the complaint. SG § 20-1009. If the EEOC subsequently reviews the complaint, the EEOC "may utilize the information gathered by" the Commission. *See* 29 C.F.R. § 1601.15.

If the Commission finds no probable cause that the discriminatory act occurred, or if the claimant wishes to bring her claim in state court prior to the conclusion of the investigation, she may elect to file a civil action in the circuit court in the county where the alleged unlawful act occurred. *See* SG § 20-1013. To bring a private action, the claimant must have "initially filed a timely administrative . . . complaint;" "at least 180 days have elapsed since the filing of the administrative . . . complaint;" and the claimant must file the civil action in state court "within two years after the unlawful employment practice occurred." SG § 20-1013(a). Filing a civil action terminates any ongoing proceedings before the Commission and shifts the authority to provide remedies available under SG § 20-1009(b) to the circuit court. *See* SG § 20-1013(c)-(d). In contrast to the two-year

respondent, the rules, procedures, powers, rights, and remedies that apply are the same as those that apply in a discrimination case in which a private person is the respondent.

9

statutory limitations period under state law, however, receipt of a "Right to Sue" letter from the EEOC upon completion of its review provides the claimant ninety days to file a civil claim in federal court, regardless of the date of the alleged unlawful act. *See* 42 U.S.C. § 2000e-5(f)(1).[4]

We analyze A.C.'s arguments on appeal through the lens of this state and federal framework. A.C.'s claim was reviewed by both the Commission under Maryland law and the EEOC under Title VII. Ultimately, the EEOC upheld and adopted the Commission's findings and dismissed A.C.'s EEOC complaint. In accordance with the procedures outlined *supra*, the EEOC included a "Notice of Rights" (i.e. "Right to Sue") letter along with the notice of the EEOC's dismissal of her claim. At this point, because A.C. did not file a civil action in state court within two years of the date of her termination in 2012, the time for A.C. to file a private action in state court had expired. In contrast, upon receiving the "Right to Sue" letter -- sent on or around December 15, 2015 -- A.C. was permitted to file a civil action in the U.S. District Court for Maryland under federal law within ninety days. Rather than filing in federal court, however, A.C. filed a petition for judicial review

_____

[4] The right to bring a private action after receiving notice of the "Right to Sue" is provided by 42 U.S.C. § 2000e-5(f)(1) as follows:

> If a charge filed with the [EEOC] is dismissed . . . , the [EEOC] . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge [] by the person claiming to be aggrieved . . . by the alleged unlawful employment practice.

of the Commission's decision in the circuit court in an attempt to appeal the Commission's finding of no probable cause and denial of reconsideration. As we discuss below, a petition for judicial review of the Commission's decision is not a proper avenue available to A.C. for pursuing her claim.

## III. The Circuit Court Did Not Err When It Dismissed A.C.'s Petition For Judicial Review.

The issue before us is whether the circuit court erred -- as a matter of law -- in granting the OAG's and the Commission's motion to dismiss. Stated differently, we determine whether the circuit court was authorized to consider the petition for judicial review of the Commission's ultimate determination. We conclude that no statute, rule or case law authorized the circuit court to entertain A.C.'s petition for judicial review. As a result, the court was legally correct in dismissing A.C.'s petition for judicial review.

A statute must authorize judicial review for the circuit court to have authority over a petition for judicial review from an administrative agency's order or action. *See* Md. Rule 7-201(a) ("The rules in this Chapter [Judicial Review of Administrative Agency Decisions] govern actions for judicial review of . . . an order or action of an administrative agency, where judicial review is authorized by statute . . . ."). As we observed in *Oltman v. Maryland State Bd. of Physicians*,

> Title 7, Chapter 200 of the Maryland Rules of Procedure explicitly applies to "judicial review of . . . an order or action of an administrative agency, *where judicial review is authorized by statute*[.]" Md. Rule 7-201(a) (emphasis added). This is consistent with the well-established principle that, "in order for an administrative agency's action properly to be before . . . any court[ ] for judicial review, there generally must

11

> be a legislative grant of the right to seek judicial review."
> *Harvey v. Marshall,* 389 Md. 243, 273, 884 A.2d 1171 (2005).
> Thus, there is typically no right to judicial review of an
> administrative decision unless that right is established *by
> statute*.

182 Md. App. 65, 73 (2008) (emphasis and alterations in original); *see also* Md. Rule 7-202(a) ("A person seeking judicial review under this chapter shall file a petition for judicial review in a circuit court *authorized to provide the review*.") (emphasis added). No provision under Title 20 of the State Government Article of the Maryland Code confers jurisdiction on the circuit court to hear petitions for judicial review of a denial of reconsideration by the Commission in cases covered by Title VII.

More generally, to permit judicial review in the circuit court, the contested administrative agency decision must be a final, appealable order. *Maryland Comm'n on Human Relations v. Baltimore Gas & Elec. Co.*, 296 Md. 46, 51–52 (1983) ("Generally, a party can resort to a court only when there is a final order in the administrative proceeding."). Our well-established test for determining whether a judicial determination is a final, appealable order is to inquire whether that determination "concludes the rights of the parties or denies them means of further prosecuting or defending their rights and interests in the subject matter of the proceedings." *Maryland-Nat'l Capital Park & Planning Comm'n v. Anderson*, 395 Md. 172, 188 (2006) (quoting *Baltimore Gas & Elec. Co.*, *supra*, 296 Md. at 56).

Specifically, whether an administrative decision by the Commission constitutes a final, appealable order depends, in part, on the subject matter of the case reviewed.

Subsection 20-1005(d)(2) of the State Government Article provides that "[*u*]*nless the United States Equal Employment Opportunity Commission (EEOC) has jurisdiction over the subject matter* of the complaint, a denial of a request for reconsideration of a finding of no probable cause by the Commission, is a final order appealable to the circuit court . . . ." In other words, the Commission's cases over which the EEOC has jurisdiction under Title VII are excluded, specifically, from those that are "appealable to the circuit court." *Id.*

In the instant case, A.C.'s claim, which is based on claims of race discrimination and retaliation, falls squarely within the subject matter over which the EEOC holds jurisdiction.[5] *See* 42 U.S.C. 2000e. The Commission's denial of A.C.'s motion for reconsideration, therefore, did not constitute a final appealable order. Instead, A.C. had the option -- which she elected to pursue -- to request a "substantial weight" review of her claim by the EEOC. The EEOC reviewed the findings of the Commission and upheld the Commission's decision, finding "no probable cause to believe that the law had been violated." As we explained above, once A.C. was provided notice of her right to sue from

---

[5] Notably, the *Maryland Register* published a "Proposed Action on Regulation" in 1977 that would have provided a complainant with the opportunity to appeal the Commission's denial of a request for reconsideration of a "no probable cause" determination. *See Maryland Register*, Volume 4, Issue 21 (Oct. 7, 1977). Currently, however, S.G. § 20-1005(d)(2) specifically excludes claims that fall under the jurisdiction of the EEOC, including claims of race discrimination.

the EEOC, she was free to file a claim in the U.S. District Court for Maryland within ninety days of the receipt of the notice.[6] A.C. chose not to pursue that course of redress. Regardless, without a statutory grant of authority to the circuit court, her petition for judicial review was improper and unauthorized.

## IV. The Commission And The OAG Had Standing To File Motions To Dismiss A.C.'s Petition For Judicial Review Of The Commission's Finding Of No Probable Cause And Denial Of Reconsideration.

A.C. challenges the Commission's standing to file a "Motion to Dismiss for Judicial Review and Preclusion from Transmitting Investigative File." Similarly, A.C. challenges the OAG's standing to file its motion to dismiss. Her challenge to the standing of the Commission is grounded, in part, on the Commission's letter of December 16, 2015 notifying her of its receipt of her petition for judicial review in which the Commission indicated that it did not intend to participate as a party. The Commission subsequently

---

[6] The option to file in state court under Maryland's anti-discrimination statute, SG § 20-606, expired two years after the discriminatory act occurred. § 20-1013(a). In this case, the alleged discriminatory act occurred no later than A.C.'s termination in May of 2012, more than two years prior to the conclusion of the Commission's investigation and the EEOC's review of her claim. On the other hand, a claimant is permitted to file in federal court within 90 days of receiving the EEOC's "Notice of Right to Sue" letter. *See* 42 U.S.C. § 2000e–5(f)(1) ("[W]ithin ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge [] by the person claiming to be aggrieved.").

filed a motion to dismiss on February 18, 2016. Thereafter, on March 1, 2016, the OAG

filed a motion to dismiss, adopting and incorporating the Commission's arguments.[7]

Maryland Rule 7-204 provides the following procedural requirements for a response

to a petition for judicial review:

> (a) Who May File; Contents.  Any person, including the agency, who is entitled by law to be a party and who wishes to participate as a party shall file a response to the petition. The response shall state the intent to participate in the action for judicial review. No other allegations are necessary.
>
> [ . . . ]
>
> (c) Time for Filing Response; Service.  A response shall be filed within 30 days after the date the agency mails notice of the filing of the petition unless the court shortens or extends the time. The response need be served only on the petitioner, and shall be served in the manner prescribed by Rule 1-321.

Md. Rule 7-204.

Regarding the Commission's standing, A.C. argues that "when the [Commission's]

Motion to Dismiss was filed on February 18, 2016 -- two full months after it had already

relinquished the right to oppose the petition, the Circuit Court should have rejected the

submission and allowed A.C.'s case to move forward."  In support of her argument, A.C.

cites to our opinion in *Egloff v. Cty. Council of Prince George's Cty*, 130 Md. App. 113

(2000).

---

[7]  The OAG had previously entered its appearance and filed a response on January 12, 2016.

*Egloff*, however, involved a third-party petitioner in a land development case where an objector to the County's approval of a development plan sought to enter the case as a third-party petitioner. 130 Md. App. at 120. Critically, in *Egloff*, a statute authorized judicial review of the particular administrative decision and provided certain criteria for who was permitted to petition for judicial review. *See id.* at 123. We determined that Egloff did not have standing because she did not meet the criteria -- specifically because she was not domiciled in the county in which the development was to occur.[8] Here, however, the circuit court was not statutorily authorized to hear a petition for judicial review, and both the Commission and the OAG sought to dismiss the case on that basis.

Secondly, neither the Commission nor the OAG is a third-party petitioner, where an analysis of the party's stake in the case is not as clear. Here, the Commission is the administrative agency that rendered the challenged decision. As such, it was clearly entitled to respond to the petition. *See Oltman*, 182 Md. App. at 79 (holding that an administrative board that issued the challenged decision may "challenge a petitioner's right to obtain judicial review of its decision via a 'preliminary motion.'"). Thus, under these circumstances, the Commission is a proper respondent to A.C.'s action.

---

[8] *Egloff*, *supra*, 130 Md. App. 113, was subsequently abrogated by *Gosain v. Cty. Council of Prince George's Cty.*, 420 Md. 197 (2011). Specifically, the Court of Appeals held that in order to have standing pursuant to the relevant statute, objectors to the development plan were not required to be domiciled in the county. This abrogation of our holding, however, does not impact our substantive analysis.

16

A.C.'s argument that the OAG did not have standing to challenge her petition for judicial review rests on A.C.'s view that the OAG "does not have a stake in the application for reconsideration process." A.C. describes the process the Commission follows in reviewing an application for reconsideration and points out that the OAG would not be able to participate in the process of the Commission's review of her application for reconsideration. Therefore, A.C. argues that the OAG is not a stakeholder in the outcome of her petition for judicial review. Had A.C. filed a proper action, the federal or state trial court's review of the case would not have focused on the Commission's decision denying A.C.'s request for reconsideration. As explained, *supra*, A.C. improperly petitioned for judicial review of a decision that the circuit court does not have the statutory authority to review. As a result, the OAG was certainly entitled to file a motion to dismiss, and to include as a basis for its motion the circuit court's lack of authority to entertain the case.

Finally, A.C. argues that both the Commission and the OAG's responses were filed too late. Pursuant to Md. Rule 7-204, a respondent must to file a response to a petition for judicial review within thirty days of notice of the petition, unless the court extends that time. The Commission did not file a response until more than two months after it received notice of the petition, and the OAG filed its motion more than a week later. A.C. contends that "had the situation been reversed and a private party like A.C. . . . did not comply with the time limits for filing a response, . . . the private party would not have been allowed to participate in the review." A.C. overlooks the vastly different roles that a petitioner and a respondent play in the course of bringing an action in the circuit court. Indeed, separate

17

statutes govern a petitioner's and a respondent's pleading requirements. In *Dep't of Pub. Safety & Corr. Servs. v. Neal*, a case in which the administrative agency petitioned for judicial review and the respondent was a private person, we explained:

> Unlike Rule 7–203 . . . , Rule 7–204 expressly grants the court discretion to extend the time for filing a response to the petition; and the language of Rule 7–204 does not preclude the court from exercising that discretion to extend the filing deadline retroactively, after it has passed.

160 Md. App. 496, 509 (2004).

Although the rule permits the trial court to reject a late response, it does not require the court to do so. *See* Md. Rule 7-204(c); *see also Toomey v. Gomeringer*, 235 Md. 456, 459 (1964) (holding that Rule B9, the predecessor to Rule 7-204, is not "inflexible and mandatory" where "it is not shown that the applicants were prejudiced by the delay"). Accordingly, we hold that the circuit court did not err when it considered preliminary motions to dismiss from both the OAG and the Commission.

**V.     The Commission Was Not Required To Transmit Its Confidential Investigative Files To The Circuit Court.**

A.C. contends that she was entitled to have the Commission's investigatory file transmitted to the circuit court. Section § 20-1101(a), State Government Article, provides the following statutory framework regarding the Commission's requirement to keep its investigative files confidential:

18

Except as provided in paragraph (2) of this subsection,[9] during an investigation of a complaint alleging a discriminatory act, and until the matter reaches the stage of public hearings:

(i) the activities of all members and employees of the Commission in connection with the investigation shall be conducted in confidence and without publicity . . . .

SG § 20-1101. Additionally, pursuant to COMAR 14.03.01.19, "request[s] for information relating to investigative files before the charge has reached the public hearing stage will be denied, except those made pursuant to [SG § 20-1101]." A "public hearing" is a "public hearing before either the Office of Administrative Hearings or any federal or State court of law." COMAR 14.03.01.18B.

As we have explained, the circuit court did not have the statutory authority to entertain A.C.'s petition for judicial review of the Commission's denial of A.C.'s request for reconsideration. The circuit court, therefore, properly dismissed the petition without a hearing. The Commission was entitled to keep its investigation of A.C.'s complaint confidential until the charge of discrimination and retaliation was properly filed and reached the public hearing stage in either a federal or state court. The circuit court, therefore, did not err when it dismissed the case without requiring the transmission of the Commission's investigative file.

---

[9] Paragraph (2) provides that "information may be disclosed at any time if both the complainant and the respondent agree to the disclosure in writing." SG § 20-1101(a)(2).

19

**VI.**   **The Circuit Court Did Not Abuse Its Discretion In Denying A.C.'s Motion To Amend Her Complaint To Include A Request For A Writ Of Mandamus.**

Finally, A.C. appeals the circuit court's decision to deny her motion to amend her petition for judicial review to include a request for a writ of mandamus, in order to allow her to compel the OAG to provide the procedures available to certain state employees under SP § 11-106.[10] Our review of a trial court's decision denying a motion to amend a pleading, is as follows:

> With respect to procedural issues, a trial court's rulings are given great deference. The determination to allow amendments to pleadings or to grant leave to amend pleadings is within the sound discretion of the trial judge. *See Robertson v. Davis,* 271 Md. 708, 710, 319 A.2d 816, 818 (1974) (discussing Rule 320, the predecessor to Rule 2–341, and stating "whether to permit an amendment rests within the sound discretion of the trial judge"); *Prudential Sec. v. E-Net, Inc.,* 140 Md.App. 194, 231–32, 780 A.2d 359, 381 (2001); *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.,* 126 Md.App. 294, 317–18, 728 A.2d 783, 794–95, *cert. denied,* 355 Md. 613, 735 A.2d 1107 (1999). Only upon a clear abuse of discretion will a trial court's rulings in this arena be overturned.

---

[10]   The State Personnel Management System Reform Act of 1996 provides the following protections for certain state employees:

> (a) Before taking any disciplinary action related to employee misconduct, an appointing authority shall: (1) investigate the alleged misconduct; (2) meet with the employee; (3) consider any mitigating circumstances; (4) determine the appropriate disciplinary action, if any, to be imposed; and (5) give the employee a written notice of the disciplinary action to be taken and the employee's appeal rights.

Md. Code Ann., State Pers. & Pens., § 11-106(a).

*Schmerling v. Injured Workers' Fund*, 368 Md. 434, 443–44 (2002).

A writ of mandamus is an "extraordinary" remedy, and the power to issue this writ is one that is "exercised . . . with caution, treading carefully so as to avoid interfering with legislative prerogative and administrative discretion." *Wilson v. Simms*, 380 Md. 206, 223 (2004) (citing *Lamb v. Hammond*, 308 Md. 286, 292 (1987)). Furthermore, "the party seeking enforcement of that duty must have a clear entitlement to have the duty performed." *Baltimore Cty. v. Baltimore Cty. Fraternal Order of Police Lodge No. 4*, 439 Md. 547, 571 (2014).

The circuit court was well within its discretion to deny A.C. leave to amend to include a request for a writ of mandamus to compel the pre-termination procedures afforded to state employees under SP § 11-106. Specifically, A.C. had "no clear entitlement" to the disciplinary procedures under SP § 11-106 or appeal procedures under SP § 11-305 for a host of reasons, not the least of which is that she failed to properly appeal her termination. Pursuant to SP § 11-108(b)(1), "[i]f an employee fails to appeal a decision in accordance with this subtitle, the employee is considered to have accepted the decision." Additionally, A.C. was not entitled to the disciplinary procedures she sought to compel under SP § 11-106, because she was a "specially appointed" at-will employee.

Under SP § 11-106, certain disciplinary procedures are available to state employees in the skilled and professional services. *See* SP § 11-102 (providing that the subtitle applies "to all employees in the State Personnel Management System within the Executive Branch except temporary employees"). An employee who is specially appointed, however, is

21

employed "at-will" and "may be terminated for any reason that is not illegal or unconstitutional, solely in the discretion of the appointing authority." SP § 11-305(b). Because of her "at-will" status, as well as the post-termination appeals procedures that apply specifically to specially appointed employees, the Court of Appeals has held that SP § 11-106 protections are afforded to specially appointed employees only for disciplinary actions *prior to* or other than termination. *See Forster v. Office of Pub. Defender*, 426 Md. 565, 570 (2012) (stating that SP § 11-113 procedures apply to at-will employees of the State only where the action taken was prior to termination).

A.C. argues that because Title 11 excepts only temporary state employees from its scope of coverage, the protections of SP § 11-106 should have applied to the circumstances of her termination. *See* SP § 11-102. In *Smack v. Dep't Of Health And Mental Hygiene*, the Court of Appeals addressed the appearance of a conflict between SP § 11-102 and the narrower appeals procedure in SP § 11-303 (a provision applicable to probationary employees) that is similar to SP § 11-305:[11]

> To be sure, § 11–106 does apply to disciplinary actions against probationary employees and, as we have seen, termination is a disciplinary action. On the other hand, it is undisputed that § 11–303 does as well. This being the case, the statutes would appear to be irreconcilably in conflict. Section 11–303 is more narrowly focused, however, than § 11–106, referring only to one form of disciplinary action, termination. Thus, they can be reconciled by treating § 11–303, the more specific of the two,

---

[11] *See Forster, supra*, 426 Md. at 590 ("Section 11–305, which governs termination of at-will employees, including those in the executive service, is analogous to § 11–303, governing termination of probationary employees.").

as an exception to § 11–106, the more general. Of course, if there were no § 11–303, § 11–106 undoubtedly would apply to the case *sub judice*. Where, however, as here, there is a provision that specifically, and without any doubt, addresses the termination, as opposed to the discipline generally, of probationary employees, that provision must control over a provision that applies, but only generally, as § 11–106 does.

*Smack v. Dep't Of Health And Mental Hygiene*, 378 Md. 298, 312-13 (2003).

Certainly, upon termination, a specially appointed employee, such as A.C. at the time of her termination (who believes that her termination was illegal or unconstitutional), may appeal the termination decision by following the procedures described under SP § 11-113(b). *See* SP § 11-305 (providing the right to appeal pursuant to the procedures outlined in § 11-113). Pursuant to SP § 11-113, however, the employee must file a written appeal within fifteen days after the employee receives notice of the disciplinary action. SP § 11-113(b)(2)(i).

A.C. was notified of her termination on May 4, 2012. She did not file an appeal with the OAG until June 21, 2012. The OAG denied A.C.'s appeal based on her failure to submit the appeal within the 15-day appeals period. A.C. was, therefore, not entitled either to an internal appeal of her termination under § 11-113 due to her delay in submitting an appeal, nor was she afforded the post-termination procedures provided to various other state employees under SP § 11-106.

Therefore, A.C. was not entitled to judicial review of the Commission's decision. Further, the decision to deny A.C.'s motion to amend her complaint was within the sound discretion of the trial court. *See Schmerling*, *supra*, 368 Md. at 443–44. Assuming

23

*arguendo* that the court would have been inclined to grant her leave to amend for these reasons, it would have only delayed the same result, as A.C. had no right to the internal pre-termination procedures she sought. Under these circumstances, the trial court did not abuse its discretion in denying A.C.'s motion to amend her petition for judicial review to seek relief through a writ of mandamus.

In sum, A.C. was not entitled to file a petition for judicial review of the Commission's decision to deny reconsideration of her complaint, or upon receipt of the EEOC's "Right to Sue" letter. To pursue her race discrimination and retaliation claims in the circuit court, A.C. was required to file a claim within two years of the alleged discriminatory action -- in this case, A.C.'s termination. Further, the Commission was not required to transmit the confidential investigative file of the agency to the circuit court upon the filing of A.C.'s unauthorized petition for judicial review. Lastly, A.C. was not entitled to a writ of mandamus compelling the OAG to afford her the internal pre-termination procedures available under SP § 11-106, or the appeals procedures under SP § 11-305, for her termination in 2012.

The circuit court, therefore, did not err in dismissing A.C.'s petition for judicial review and denying her leave to amend. Accordingly, we affirm the circuit court's order (1) granting the OAG's motion to dismiss; (2) granting the Commission's "motion to dismiss petition for judicial reviewed preclusion from transmitting its investigative file,"

and (3) denying A.C.'s request for leave to amend her complaint to include a request for a writ of mandamus.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**